Filed 7/22/15  Steiger v. Steiger CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| LEE STEIGER, as Cotrustee, etc.,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>PAUL STEIGER, as Cotrustee, etc.,<br><br>    Defendant and Respondent. | D066774<br><br><br>(Super. Ct. No. 37-2013-00072651-PR-TR-CTL) |

APPEAL from orders of the Superior Court of San Diego County, Julia C. Kelety, Judge.  Affirmed.

Lee Steiger, in pro. per., for Plaintiff and Appellant.

Van Dyke & Associates, Richard S. Van Dyke and James A. Bush for Defendant and Respondent.

The trial court found that a document appearing to amend the Louise A. Steiger Trust Dated May 11, 1990 (Trust) had not been properly delivered pursuant to the Trust's requirements and thus, was not a valid amendment.  If valid, it would have made Lee

Steiger (Lee) the Trust's sole beneficiary as opposed to beneficiaries in equal shares with his brother, Paul Steiger (Paul). Lee, appearing in propria persona, appeals contending there were procedural irregularities leading to the trial court's decision and the amendment was effectively delivered. We reject Lee's contentions and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts are undisputed. In 1990, Louise A. Steiger (Louise) created the Trust through a written agreement, defining herself as the Donor and Trustee. The agreement generally provided for payments of income to Louise during her lifetime and, at her death, distribution of the remaining estate "in equal shares to her issue," i.e., her sons Lee and Paul. Louise reserved the right to amend the Trust "at any time or times, by notice in writing delivered to the Trustee, and such amendment or modification shall be effective immediately upon delivery to the Trustee. . . ." The Trust agreement further provided, "The word 'Trustee' as used herein shall be interpreted to mean Trustee or Trustees, whichever shall be appropriate[,]" and it "shall be construed for all purposes in accordance with the laws of the State of New Jersey."

The Trust was amended in 2000 and 2006. Under the 2000 amendment, Paul became a cotrustee with Louise. Under the 2006 amendment, Louise resigned as cotrustee, and Lee became a successor cotrustee with Paul. Neither amendment affected the beneficiaries of the Trust.

In March 2010, Louise signed a document titled, "Official Instruction For Trusts and Funds in the Name of Louise A. Steiger" (2010 Instruction). It partially instructed

2

for the Trust to "have Lee F. Steiger as the only beneficiary." Prior to Louise's death, the 2010 Instruction was delivered to Lee, but not Paul. In April 2011, Louise died.

In November 2013, Lee filed a petition in San Diego County Superior Court to determine the Trust beneficiaries, which was the first time the 2010 Instruction was delivered to Paul. The case proceeded with both parties represented by counsel. In early July 2014, the court set a September 18, 2014, hearing for oral argument on the legal issue of whether the 2010 Instruction constituted a valid Trust amendment, and ordered briefs to be filed on the issue by September 15, 2014. Both Lee and Paul timely filed briefs. As scheduled, the court heard argument by counsel and issued an order, which found in part: (1) the Trust's amendment requirements must be construed under New Jersey law; (2) any amendment was required to be delivered to Paul; (3) the 2010 Instruction was not timely delivered to Paul, who was cotrustee; and therefore, (4) it was not a valid amendment to the Trust.[1]

## DISCUSSION

### I

Lee asserts a litany of "irregular circumstances" surrounded the trial court hearing, including: (1) his counsel did not file a brief, (2) the hearing occurred in the context of a case management conference rather than a "trial," (3) the court ordered simultaneous briefs, (4) he was not asked to sign a "verification" in connection with the hearing, (5) he

---

[1] Lee also appeals a second order dated September 18, 2014, where, following the trial court's rejection of Lee as the sole beneficiary, it directed a preliminary distribution to each beneficiary, Paul and Lee. Lee assigns no separate error to the court's second order apart from his contention that the 2010 Instruction was an effective amendment.

3

did not attend the hearing because his counsel did not inform him of it, (6) he had insufficient time to research New Jersey law, (7) there was no court reporter present, and (8) he was not allowed to present an argument, due to judicial impartiality or corruption.

Lee's assertions are frivolous, contradicted by the record, and/or do not constitute grounds for reversal. The court was well within its discretion to set the briefing schedule and hearing that it did, which provided sufficient notice of the legal issue to be decided and over two months of preparation time. (See Code Civ. Proc., § 1005, subd. (b).) Indeed, Lee's counsel signed and filed a coherent six-page brief entitled, "Lee Steiger's Memorandum on Issue of Whether March 7, 2010 Instrument Satisfied Technical Formalities for an Amendment to the Trust."[2] A "verification" of the brief was not required. (Code Civ. Proc., § 446, subd. (a).) Further, Lee admits his counsel appeared at the hearing and, therefore, his personal attendance was not necessary. Finally, it was the parties' responsibility to arrange for a court reporter if one was desired. (Cal. Rules of Court, rule 2.956(c) [court reporting services in civil cases].) Lee has failed to establish any reversible error on procedural grounds.

II

We now consider whether the 2010 Instruction was a valid amendment to the Trust. The interpretation of a trust instrument is a question of law subject to independent

---

[2] The memorandum was submitted as part of Paul's motion to augment the record on appeal. Lee filed a "Motion to Deny Respondent's Motion to Augment the Record," arguing that the augmented record was fabricated. Lee's "motion" is meritless and denied. The documents attached to Paul's motion to augment are deemed a part of the record on appeal.

review when the relevant facts are undisputed. (*Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 604.) On appeal, the parties agree the Trust's provisions are to be construed under New Jersey law.

When called upon to interpret a trust, New Jersey courts aim to ascertain the settlor's intentions. To do so, the " 'primary inquiry' must be directed to 'the language of the instrument itself.' " *(In re Trust Created by Agreement Dated December 20, 1961* (N.J. 2001) 765 A.2d 746, 755.) If the trust language is clear, and no ambiguity is asserted, the court confines itself to giving effect to the language used. (*Ibid.*; see also *Fid. Union Trust Co. v. Parfner* (N.J. Ch. 1944) 37 A.2d 675, 678 ["The intention of the settlor, as expressed in the trust instrument, governs."].)

Here, the Trust agreement provided as follows: "Donor reserves the right to amend, modify or revoke this trust, in whole or in part, or to withdraw assets therefrom, at any time or times, by notice in writing delivered to the Trustee[s], and such amendment or modification shall be effective immediately upon delivery to the Trustee[s]. . . ." Although Lee concedes that the Trust's language required any amendment to be delivered to Paul (a cotrustee), he argues delivery can be made "at any time," including in 2013 well after Louise's death. We disagree, and find that Louise's power of amendment had to be exercised in the manner specified during her lifetime.

Notably, the Trust agreement expressly required the Trustees make an estate distribution "[u]pon the death of the Donor," which, as a corollary, necessitated the beneficiaries be ascertained as of that time. We are mindful of the Trust's overriding purpose, which was to sustain Louise's lifetime income and, at her death, provide an

5

orderly estate distribution to her surviving children. This purpose would be entirely frustrated if amendments could go into effect years after her death. In comparable New Jersey cases involving inter vivos trusts, donors were required to exercise the right of revocation or modification during their lifetimes. (See, e.g., *In re Estate of Kovalyshyn* (N.J. Super. 1975) 343 A.2d 852, 856-857 [where change in beneficiary required a delivered instrument in writing to the bank, right to modify trust was an inter vivos power that could not be exercised by an executed will]; *In re Estate of Henning* (N.J. Super. Ct. Ch. Div. 1971) 282 A.2d 786, 788 [a will that did not have legal efficacy until after donor's death could not revoke or modify trust].)

Moreover, to the extent the 2010 Instruction purported to direct payments from the Trust estate solely to Lee, it was required to comply with Article Second of the Trust agreement, which granted Louise a right to direct payments from principal (in whole or part), "by instruments in writing, signed by the Donor and delivered by the Donor to the Trustee[s] during the lifetime of the Donor." Naturally, directing the payment of principal could also have operated as a revocation or modification of the Trust, and any such instruction had to be delivered to the Trustees during Louise's lifetime.

Louise did not deliver the 2010 Instruction to Paul during her lifetime, and Lee admits it was not delivered to Paul until several years after Louise's death. Accordingly, the 2010 Instruction was not an effective direction or amendment to the Trust. For the first time on appeal, Lee makes unsubstantiated factual arguments concerning why he was obligated to keep it secret from Paul prior to Louise's death. We do not consider

6

those arguments, and even if they were substantiated, would only confirm that the 2010 Instruction was purposely withheld from delivery during Louise's lifetime.

## DISPOSITION

The orders are affirmed.  Defendant is awarded costs on appeal.


BENKE, Acting P. J.

WE CONCUR:


HUFFMAN, J.


McINTYRE, J.